**FOR PUBLICATION**

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **JOSEPH THOMAS and INGRID**<br>**THOMAS-JACKSON, individually**<br>**and as personal representatives of the**<br>**Estate of GILBERT THOMAS,**<br><br>    **Plaintiffs,**<br><br>        **v.**<br><br>**KIP a/k/a KIPPY a/k/a KID ROBERSON,**<br>**individually and in his official capacity,**<br>**SMUGGLER'S AT MILL HARBOUR, LLC.,**<br>**and GOVERNMENT OF THE VIRGIN**<br>**ISLANDS,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)        **Civil Action No. 2008-075**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Terri L. Griffiths, Esq.,**
St. Croix, U.S.V.I.

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
        *For the Plaintiffs*

**Vincent A. Colianni, II, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Kip Roberson*

**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
        *For Defendant Government of the Virgin Islands*

**<u>MEMORANDUM OPINION</u>**

**Lewis, District Judge**

THIS MATTER is before the Court on the Motion to Dismiss for Lack of Jurisdiction

(Dkt. No. 192) filed by Defendant Government of the Virgin Islands (the "Government")

pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs Joseph Thomas and Ingrid

Thomas-Jackson oppose the Motion. For the reasons that follow, the Court will grant the Motion and dismiss the Government from this action with prejudice.

## I.   BACKGROUND

### A.   Procedural History

By Complaint filed on August 18, 2008 (Dkt. No. 1), Plaintiffs initiated this tort action to recover damages stemming from the April 18, 2008 shooting death of their son, Gilbert Thomas ("Thomas"). On March 13, 2009, Plaintiffs filed a Motion to Amend Complaint (Dkt. No. 20) and a proposed Amended Complaint (Dkt. No. 20-2) seeking to correct identifying information of two of the defendants named in the original Complaint. The Court granted the Motion and deemed the Amended Complaint filed on March 26, 2009. (Dkt. No. 22).

In their Amended Complaint, Plaintiffs allege that Kip Roberson, an Assistant Attorney General ("AAG") for the Government, unlawfully and without provocation shot and killed Thomas at Smuggler's Cove Bar and Restaurant ("Smuggler's") on St. Croix, United States Virgin Islands. (Dkt. No. 20-2 at ¶¶ 3, 10). Plaintiffs further allege that at the time of the shooting on April 18, 2008, AAG Roberson was under the influence of alcohol he had consumed at Smuggler's. (*Id.* at ¶ 11).

Plaintiffs' Amended Complaint contains one federal count and five counts arising under local law. In the federal count, Count II, Plaintiffs claim that AAG Roberson "violated 42 U.S.C. [§] 1983 and the civil and human rights" of Thomas by wrongfully killing him "while acting under apparent color of authority as an employee of the Virgin Islands Department of Justice, Office of the Attorney General[.]" (*Id.* at ¶¶ 19-20). Plaintiffs also assert that at all times mentioned in the Amended Complaint, AAG Roberson was "acting under color of law, and within the scope of his employment with the Government of the Virgin Islands." (*Id.* at ¶ 3).

2

In the remaining counts, Plaintiffs contend that: (1) AAG Roberson is liable for assault and battery and the wrongful death of Thomas (Count I); (2) Mill Harbour Condominium and Mill Harbour Condominium Association (the "Mill Harbour Defendants"), as well as Smuggler's, are liable under theories of negligence and premises liability for harboring AAG Roberson and serving him alcohol while knowing or having reason to know that he possessed a firearm (Count III);[1] (3) the Government is liable for negligently hiring, retaining, training, and supervising AAG Roberson (Count IV); (4) all defendants are liable for negligent and intentional infliction of emotional distress (Count V);[2] and (5) all defendants are liable for punitive damages (Count VI).

After discovery was conducted, the Government filed the instant Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 192) on May 31, 2012, pursuant to Federal Rule of Civil Procedure 12(b)(1). In its Motion and supporting Memorandum (Dkt. No. 193), the Government argues that it should be dismissed from this action for lack of subject matter jurisdiction because: (1) the Government has not waived its sovereign immunity from tort actions stemming from conduct of its employees committed outside the scope of their employment; and (2) AAG Roberson was acting outside the scope of his employment as a prosecutor when he shot Thomas.

---

[1] By Order dated April 17, 2013, the Court—at Plaintiffs' request and pursuant to Federal Rule of Civil Procedure 41(a)(2)—dismissed the Mill Harbour Defendants from this action with prejudice as a result of a settlement agreement reached with Plaintiffs. (Dkt. No. 273).

[2] Plaintiffs' inconsistent use of the plural and possessive forms of "defendant" in Count V make it difficult to discern against whom Plaintiffs attempt to state a claim. (*See* Dkt. No. 20-2 at ¶¶ 34-38). Because it does not alter the Court's analysis regarding the instant Motion to Dismiss, the Court will construe Count V as a claim against all defendants.

(*Id.* at 3-6). The Government also filed a Statement of Undisputed Facts (Dkt. No. 194) with supporting exhibits[3] to establish the factual basis for its Motion.[4]

Plaintiffs responded by filing an Opposition to the Motion (Dkt. No. 217),[5] a Response to the Government's Statement of Undisputed Facts (Dkt. No. 207), and a Statement of Additional

---

[3] The Government filed a Motion (Dkt. No. 195) seeking, *nunc pro tunc*, a one-day extension of time to file its Statement of Undisputed Facts. Plaintiffs filed a Notice (Dkt. No. 196) indicating that they did not object to the extension. The Court granted the Motion (Dkt. No. 274), and will consider the Statement of Undisputed Facts.

[4] The Government alternatively requests that the Court construe its Motion to Dismiss for lack of subject matter jurisdiction as a motion for summary judgment. (Dkt. No. 193 at 1 n.1). The Court will decline to do so "[b]ecause a motion to dismiss for lack of subject matter jurisdiction attacks the power of a court to enter any ruling on the merits, [and] the jurisdictional issue is generally decided prior to the entry of judgment on the merits." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 889 n.12 (3d Cir. 1977). However, as discussed *infra*, Part II, the Court *will* consider the Statement of Undisputed Facts, supporting exhibits, and Plaintiffs' responses thereto because the Court is permitted to go outside of the pleadings to make factual findings decisive to the issue of jurisdiction.

[5] On the same day that Plaintiffs filed their thirty-five-page Opposition, Plaintiffs filed a Motion seeking leave of the Court to exceed the twenty-page limit on briefs imposed by LRCi 7.1(d) because "the issues are fact intensive and the [Government] has raised numerous legal issues." (Dkt. No. 216 at 1-2). The Government opposed the Motion, arguing that Plaintiffs' Opposition is rife with irrelevant information which serves only to increase the cost of litigation and waste the time of the Court and the parties. (Dkt. No. 218 at 1-2). The Court granted Plaintiffs' Motion—albeit reluctantly—to avoid the need for Plaintiffs to refile the Opposition at this stage of the proceedings. However, the Court agrees that Plaintiffs' Opposition includes a considerable amount of information that is not relevant to the resolution of the Motion to Dismiss, and will therefore disregard such information in considering the Government's Motion. For example, Plaintiffs' Opposition cites to various exhibits to establish, *inter alia*, that: (1) Plaintiffs "are hard-working folk of modest economic means who constantly strive to 'do better'"; (2) Thomas "pulled his weight around the household"; (3) Thomas "and his mother watched the Discovery Channel together"; (4) Mrs. Thomas-Jackson "was a conscientious mother" who described her son as a "people person"; and (5) Thomas' father graduated from high school. (Dkt. No. 217 at 5-6). Similarly, Plaintiffs' Statement of Additional Facts also included this and other irrelevant information. (Dkt. No. 202 at ¶¶ 2-20) (noting, among other things, that one of Thomas' sisters was in the United States Air Force and resided in California when he was killed, and that the other was a graduate of the Rochester Institute of Technology who was working as a media designer in New York at the time of the shooting). Plaintiffs' account of an allegedly partial investigation conducted by the Government and other post-shooting events, (*see e.g.*, Dkt. No. 202 at ¶¶ 54-64), are similarly irrelevant to the current inquiry.

Facts (Dkt. No. 202) with supporting exhibits. In their filings, Plaintiffs contend that AAG Roberson was acting within the scope of his employment, and that the Court should proceed to a trial by jury instead of dismissing the Government from the action. The Government filed a Response to Plaintiffs' Statement of Additional Facts (Dkt. No. 238), and a Reply to Plaintiffs' Opposition to the Motion to Dismiss (Dkt. No. 241). The matter is ripe for disposition.

**B.    Facts**

As discussed *infra*, Part II, in resolving the pending Motion to Dismiss pursuant to Rule 12(b)(1), the Court is not confined to the allegations of the Amended Complaint. Instead, the Court may go outside of the pleadings and examine evidence bearing on its subject matter jurisdiction. Based on the parties' filings and supporting exhibits, the following facts are undisputed.

In September 2007, Kip Roberson began his employment with the Government. Specifically, he was hired as an Assistant Attorney General with the Virgin Islands Department of Justice ("VIDOJ"). (Dkt. No. 238 at ¶ 23; Dkt. No. 202 at ¶ 24 n.3). In this position, AAG Roberson's job duties consisted of prosecuting criminal cases for the VIDOJ and providing legal advice to law enforcement officers. (Dkt. No. 194 at ¶ 19; Dkt. No. 207 at ¶19; *see also* Dkt. No. 202-22 at 1 (noting that AAG Roberson is a criminal prosecutor with the VIDOJ's Office of the Attorney General, which "performs the function of prosecuting criminal defendants and seeking to have them punished and/or imprisoned for criminal acts")).

On the evening of Friday, April 18, 2008, AAG Roberson went to Smuggler's Cove Bar and Restaurant at the Mill Harbour Condominium development with his girlfriend, Suzane Trepoy, to meet with friends. (Dkt. No. 194 at ¶¶ 1-2, 9-10; Dkt. No. 207 at ¶¶ 1-2, 9-10). While

at Smuggler's, AAG Roberson consumed alcohol—three servings of whiskey on the rocks and at least a portion of one beer. (Dkt. No. 194 at ¶ 11; Dkt. No. 207 at ¶ 11).

Around 10:00 p.m., an altercation broke out at Smuggler's. Kevin Scatliffe—an employee of Smuggler's who had worked that night in the kitchen with Thomas—grabbed and restrained Thomas, who was holding a pocket knife. AAG Roberson intervened, grabbing Thomas by the throat. (Dkt. No. 202 at ¶ 43; Dkt. No. 202-4 at 46-48).[6] Mr. Scatliffe and AAG Roberson released Thomas after he dropped the knife. (Dkt. No. 202-4 at 46-48; Dkt. No. 202-18 at 1-2). Thomas returned to the kitchen, retrieved two knives, and went in the direction of AAG Roberson. (Dkt. No. 202 at ¶ 47; Dkt. No. 202-4 at 46-48). AAG Roberson drew his .40 caliber Glock pistol and fired three shots, killing Thomas. (Dkt. No. 194 at ¶¶ 1, 3, 12; Dkt. No. 207 at ¶¶ 1, 3, 12; Dkt. No. 202 at ¶¶ 47-48).

The pistol AAG Roberson used to shoot Thomas was not issued to him by the Government. (Dkt. No. 194 at ¶ 36; Dkt. No. 207 at ¶ 36). It was AAG Roberson's personal weapon, and he purchased both the pistol and its ammunition with his own funds. (Dkt. No. 194 at ¶¶ 14-17; Dkt. No. 207 at ¶¶ 14-17).[7] The ammunition AAG Roberson used (.40 caliber full

---

[6] The Government does not dispute Plaintiffs' account of the facts immediately preceding the shooting. Instead, the Government states that the facts are "immaterial and irrelevant for purposes of ruling" on the instant Motion to Dismiss. (*See e.g.*, Dkt. No. 238 at ¶ 43). The Court disagrees, as it is appropriate to examine the facts surrounding the shooting itself to determine whether AAG Roberson was acting within the scope of his employment with the Government when he shot Thomas. In any event, the evidence upon which the Government relies to establish the factual basis for its Motion—namely, transcripts of AAG Roberson's deposition testimony (Dkt. Nos. 194-1; 194-4; 202-4; 202-5), AAG Roberson's written statement to the police (Dkt. No. 194-3), and Ms. Trepoy's statement (Dkt. No. 194-2)—supports the account detailed above.

[7] Plaintiffs do not deny these facts, nor have they identified any evidence contradicting AAG Roberson's deposition testimony in this regard. Rather, Plaintiffs contend that these facts are "not material," and claim that the VIDOJ "clothed Roberson in the cloak of official capacity with respect to Roberson's license to carry a concealed weapon." (Dkt. No. 207 at ¶¶ 14-17). These

metal jacket rounds) is not used by law enforcement officers. (Dkt. No. 202 at ¶ 48; Dkt. No. 238 at ¶ 48).[8]

According to Attorney General Vincent F. Frazer, the VIDOJ's Office of the Attorney General does not have any written policies authorizing AAGs to carry firearms, (Dkt. No. 194 at ¶ 18; Dkt. No. 207 at ¶ 18), nor does it have any polices regarding the use of deadly force, (Dkt. No. 202 at ¶ 25; Dkt. No. 238 at ¶ 25). AAGs are not required to carry firearms to perform their job duties, (Dkt. No. 194 at ¶ 32; Dkt. No. 207 at ¶ 32), and AAG Roberson did not receive any firearms training from the VIDOJ, (Dkt. No. 202 at ¶ 25; Dkt. No. 238 at ¶ 25).

Prior to the shooting, AAG Roberson applied for and obtained a license from the Virgin Islands Police Department ("VIPD") to lawfully carry his personal Glock pistol. The VIPD issued the permit on September 18, 2007, authorizing AAG Roberson to carry the pistol for "home and personal protection" during his tenure as an AAG with the VIDOJ. (Dkt. No. 238-3; Dkt. No. 202 at ¶ 24; Dkt. No. 238 at ¶ 24).

## II.    LEGAL PRINCIPLES

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction to hear a case. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997); Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions can take two forms: "facial attacks" or "factual attacks." A "facial attack" is similar to a Rule 12(b)(6) motion to dismiss, and challenges "whether the allegations on the face of the

---

legal conclusions offered by Plaintiffs do not, however, controvert AAG Roberson's deposition testimony as to the underlying facts.

[8] Virgin Islands Police Department Sergeant Dino Herbert testified during his deposition that law enforcement officers do not use full metal jacket rounds because they are more likely than other ammunition to go "through and through" a person's body. In other words, full metal jacket rounds are more likely to pass through the body of an intended target and continue along their trajectory, instead of stopping on first impact. (Dkt. No. 202-21 at 116-19; Dkt. No. 202 at ¶ 48; Dkt. No. 238 at ¶ 48).

complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). On the other hand, a "factual attack" challenges the existence of facts sufficient to confer subject matter jurisdiction. *Carpet Grp. Int'l. v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

Here, the Government notes that it is bringing a factual attack, contending that the undisputed facts demonstrate that this Court lacks subject matter jurisdiction. Specifically, the Government argues that: (1) it has not waived its sovereign immunity from tort actions stemming from conduct of its employees committed outside the scope of their employment; and (2) the facts demonstrate that AAG Roberson was acting outside the scope of his employment as a prosecutor when he shot Thomas. (Dkt. No. 193 at 3-6).[9] In evaluating such a factual attack on subject matter jurisdiction, district courts are "permitted to make factual findings, beyond the pleadings, [that are] decisive to determining jurisdiction." *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (citation omitted); *see also Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011) ("Because defendants' motion to dismiss was based on facts outside the pleadings (i.e., their Rule 68 offer of judgment), the trial court was entitled to weigh and evaluate the evidence bearing on the jurisdictional dispute."), *rev'd on other grounds*, 133 S. Ct. 1523; *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) ("Because the [defendant]'s motion was not merely a facial challenge to the district court's jurisdiction, the court was not confined to allegations in the plaintiff's complaint, but could consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."); *Mortensen v. First Fed. Sav. &*

---

[9] Such a challenge is properly raised in a Rule 12(b)(1) motion because the extent to which immunity is waived by a sovereign "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"); *Askew v. Trs. of the Gen. Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) (noting the trial court "consulted depositions, affidavits, and other pertinent evidence" in addressing a factual challenge). Because there is no statutory direction regarding the procedures for making such factual findings, the mode of determination is left to the trial courts. *Mortensen*, 549 F.2d at 891 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)).

When subject matter jurisdiction is challenged under Rule 12(b)(1), plaintiff bears the burden of persuading the court that it has jurisdiction. *Symczyk*, 656 F.3d at 191 n.4 (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *CNA*, 535 F.3d at 145; *Mortensen*, 549 F.2d at 891. Further, in a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### III.   DISCUSSION

The Government contends that it should be dismissed from this action because it has not waived sovereign immunity with respect to tort actions—like the instant case—stemming from conduct of its employees committed outside the scope of their employment. The Court will address the extent of the Government's immunity before turning to the question whether Roberson was acting within, or outside, the scope of his employment as an AAG when he shot Thomas.

A.      **Sovereign Immunity**

"The Virgin Islands, an unincorporated Territory of the United States, is 'not sovereign, in the true sense of that term.'" *Mathes v. Century Alumina Co., LLLP*, 2009 U.S. Dist. LEXIS 52135, *12 (D.V.I. June 19, 2009) (quoting *Gov't of V.I. v. Bryan*, 818 F.2d 1069, 1072 (3d Cir. 1987)). Nonetheless, Congress has "granted [the Virgin Islands] 'attributes of autonomy similar to those of a sovereign government or a state' through the Revised Organic Act." *Id.* (quoting *Bryan* at 1072). Among those attributes, the Revised Organic Act, 48 U.S.C. § 1541 *et seq.*, provides immunity from tort claims to the Government of the Virgin Islands and its officers and employees acting in their official capacities, unless such immunity is waived. *See* 48 U.S.C. § 1541(b) (stating that "no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature [of the Virgin Islands]"); *Mathes*, 2009 U.S. Dist. LEXIS 52135 at *12 (same).

The Virgin Islands Tort Claims Act, 33 V.I.C. §§ 3401-3416 ("VITCA"), provides for a limited conditional waiver of this immunity from tort actions. *Wilson v. V.I. Water & Power Auth.*, 2010 U.S. Dist. LEXIS 129229, *3 (D.V.I. Dec. 7, 2010). In particular, this "immunity is waived 'with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands *while acting within the scope of his office or employment*." *Id.* (emphasis added) (quoting *Mathes v. Century Alumina Co., LLC*, 2010 U.S. Dist. LEXIS 866, *7 (D.V.I. Jan. 5, 2010), in turn citing 33 V.I.C. § 3408(a)); *see also Frank v. Gov't of V.I.*, 2010 U.S. Dist. LEXIS 32341, *34 n.8 (D.V.I. Mar. 31, 2010) (noting that the VITCA also "provides that it applies to 'a claim to recover damages for injuries to property or for personal injury caused by the tort of an

officer or employee of the Government of the United States Virgin Islands *while acting as such officer or employee . . . .*") (emphasis added) (quoting 33 V.I.C. § 3409).

By limiting the waiver of its immunity from tort claims to harm "caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands *while acting within the scope of his office or employment,*" 33 V.I.C. § 3408(a) (emphasis added), the Government of the Virgin Islands maintains its sovereign immunity—pursuant to 48 U.S.C. § 1541(b)—for harm caused by its employees who were *not* acting within the scope of their employment. In other words, "the Government [of the Virgin Islands] is held liable for the acts of its employees, *if, and only if,* the latter are acting within the scope of their employment." *Mathurin v. Gov't of V.I.*, 398 F. Supp. 110, 113 (D.V.I. 1975) (emphasis added).[10] Accordingly, the Court must determine whether AAG Roberson was acting within the scope of his employment with the Government when he shot Thomas.

**B.     Scope of Employment**

To determine whether an employee acted within the scope of his employment under Virgin Islands law, courts look to the Restatement of the Law of Agency. *See Anderson v. Gov't of V.I.*, 199 F. Supp. 2d 269, 275 (D.V.I. 2002); *Chase v. V.I. Port Auth.*, 3 F. Supp. 2d 641, 642 (D.V.I. 1998); *Charles v. Mitchell*, 21 V.I. 478, 481 (D.V.I. 1985).[11] THE RESTATEMENT (THIRD) OF AGENCY (2006) ("Restatement Third") provides in pertinent part:

---

[10] Analogously, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, also provides a limited, conditional waiver of the United States' sovereign immunity, and subjects the United States to liability for tort claims stemming from the negligent or wrongful conduct of federal employees "while acting within the scope of [their] office or employment . . . ." 28 U.S.C. § 1346(b)(1); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001).

[11] "In the Virgin Islands, '[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local

(1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.

(2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement Third § 7.07(1)-(2).[12]

As Comment *b* to section 7.07 explains: "An employer does not assume the role of insurer against all harm suffered by third parties with whom its employees may interact." Restatement Third § 7.07 cmt. b. In the context of an employee who commits tortious conduct "outside the range of activity that an employer may control, subjecting the employer to liability

---

laws to the contrary.'" *Smith v. Katz*, 2013 U.S. Dist. LEXIS 40804, *25 n.2 (D.V.I. Mar. 22, 2013) (quoting 1 V.I.C. § 4).

[12] In *Anderson v. Government of the Virgin Islands*, this Court quoted RESTATEMENT (SECOND) OF AGENCY § 228(1)(a)-(d) (1958) for the proposition that: "Under Virgin Islands law, [']conduct of a servant is within the scope of employment if, but only if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master . . . [and] (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master[.][']" *Anderson*, 199 F. Supp. 2d at 275-76; *see also Chase*, 3 F. Supp. 2d at 642-43 (same); *Charles*, 21 V.I. at 481 (same). Four years after *Anderson* was decided, the American Law Institute published the Third Restatement, which differs from the Second Restatement's formulation of the scope-of-employment doctrine "because [the Third Restatement] is phrased in more general terms." Restatement Third § 7.07 cmt. b. The Court will employ the language of the Third Restatement because the Virgin Islands Supreme Court has "noted [that] 'a strong preference exists for following the most recent Restatement over an older version . . . .'" *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299 (3d Cir. 2012) (quoting *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 976 (S. Ct. V.I. 2011)); *see also Jones v. L.S. Holdings, Inc.*, 53 V.I. 48, 55 (V.I. Super. Ct. 2010) (applying Restatement Third § 7.07 to determine whether employees' acts were within the scope of their employment); *Bowen v. Zacko*, 50 V.I. 22, 28 (V.I. Super. Ct. 2008) (same). The substance of the Court's analysis, however, does not change. As discussed *infra*, AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas regardless of whether the general terminology of the Third Restatement or the Second Restatement's more specific formulation is used.

would not provide incentives for the employer to take measures to reduce the incidence of such tortious conduct." *Id.*

In evaluating whether an employee's tortious conduct is within the scope of his employment, "the nature of the tort is relevant, as is whether the conduct also constitutes a criminal act." Restatement Third § 7.07 cmt. c. "An employee's intentionally criminal conduct may indicate a departure from conduct within the scope of employment," and "[t]he nature and the magnitude of the conduct are relevant to determining the employee's intention at the time." *Id.*[13] Ultimately, "[i]f an employee's tortious conduct is unrelated either to work assigned by the employer or to a course of conduct that is subject to the employer's control, the conduct is outside the scope of the employment." Restatement Third § 7.07 cmt. b.

With these principles in mind, the Court finds that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas.

Here, the undisputed evidence shows that at the time of the shooting, AAG Roberson was not "performing work assigned by [the Government] or engaging in a course of conduct subject to [the Government]'s control," as required for the Court to find that he was acting in the scope of his employment. *See* Restatement Third § 7.07(2). Instead, the evidence reveals that on the evening of Friday, April 18, 2008, AAG Roberson went with his girlfriend to Smuggler's—not for work, but to meet with friends. (Dkt. No. 194 at ¶¶ 1-2, 9-10; Dkt. No. 207 at ¶¶ 1-2, 9-10).

---

[13] To illustrate this principle, Comment *c* explains that if a restaurant employee charged with resolving customer complaints gets into an argument with a customer while attempting to resolve the customer's complaint, and the employee slams his fists into a stack of trays during the argument, the employer is subject to liability if the trays scatter and injure a patron because the employee's slamming of trays was incidental to performing work assigned to him. Restatement Third § 7.07 cmt. c, illus. 5. "If, instead, [the employee] *draws a gun and shoots* [the customer], the nature of [the employee]'s action—which constitutes a serious crime—and its extreme quality may indicate that [the employee] has launched upon an independent course of action," which would demonstrate that the employee was not acting within the scope of his employment. *Id.* (emphasis added).

He was therefore engaging in social activity on his personal time. There is nothing about AAG Roberson's presence at Smuggler's on that fateful evening or his purpose for being there that would suggest—even remotely—that he was "performing work assigned by the [Government] or engaging in a course of conduct subject to the [Government]'s control." *See* Restatement Third § 7.07(2).

While at Smuggler's, AAG Roberson consumed alcohol—three servings of whiskey and some beer. (Dkt. No. 194 at ¶ 11; Dkt. No. 207 at ¶ 11). Then, around 10:00 p.m., an altercation broke out and AAG Roberson intervened, grabbing one of the individuals involved—Thomas— by the throat. (Dkt. No. 202 at ¶ 43; Dkt. No. 202-4 at 46-48). After Thomas dropped the pocket knife he was holding, AAG Roberson and the other man involved released him. (Dkt. No. 202-4 at 46-48; Dkt. No. 202-18 at 1-2). Thomas returned to the kitchen, retrieved two knives, and went in the direction of AAG Roberson. (Dkt. No. 202 at ¶ 47; Dkt. No. 202-4 at 46-48). AAG Roberson drew his Glock pistol and fired three shots, killing Thomas. (Dkt. No. 194 at ¶¶ 1, 3, 12; Dkt. No. 207 at ¶¶ 1, 3, 12; Dkt. No. 202 at ¶¶ 47-48). These additional facts do not convert what was unquestionably a personal activity and personal conduct by AAG Roberson into a work-related endeavor or conduct subject to the Government's control.

Plaintiffs have not presented any evidence showing that AAG Roberson was performing work assigned by the Government when he intervened in this altercation, or that such intervention was encompassed within his job duties. To the contrary, the evidence shows that AAG Roberson had the job duties of a criminal prosecutor only, and not those of a law enforcement officer. As a prosecutor for the Government, AAG Roberson's duties were limited to prosecuting criminal cases for the VIDOJ and providing legal advice to law enforcement officers. (Dkt. No. 194 at ¶ 19; Dkt. No. 207 at ¶19; *see also* Dkt. No. 202-22 at 1 (noting that

AAG Roberson is a criminal prosecutor with the VIDOJ's Office of the Attorney General, which "performs the function of prosecuting criminal defendants and seeking to have them punished and/or imprisoned for criminal acts")). There is nothing about AAG Roberson's job duties as a prosecutor which suggests that they included the law enforcement responsibilities of a peace officer. Consistent with this conclusion are the undisputed facts that: the VIDOJ's Office of the Attorney General does not have any written policies authorizing AAGs to carry firearms, (Dkt. No. 194 at ¶ 18; Dkt. No. 207 at ¶ 18), nor does it have any policies respecting the use of deadly force, (Dkt. No. 202 at ¶ 25; Dkt. No. 238 at ¶ 25); AAGs are not required to carry firearms to perform their job duties, (Dkt. No. 194 at ¶ 32; Dkt. No. 207 at ¶ 32); and the Government did not issue AAG Roberson a firearm to perform his job duties or provide him with any firearms training, (Dkt. No. 194 at ¶ 36; Dkt. No. 207 at ¶ 36; Dkt. No. 202 at ¶ 25; Dkt. No. 238 at ¶ 25).[14]

Plaintiffs have also failed to present any evidence that AAG Roberson was engaged in a course of conduct that was subject to the Government's control when he intervened in the altercation at Smuggler's. The pistol used by AAG Roberson was his own personal weapon, and he purchased with his own funds both the pistol and a type of ammunition that is not used by law enforcement officers. (Dkt. No. 194 at ¶¶ 15-16; Dkt. No. 207 at ¶¶ 15-16; Dkt. No. 202 at ¶ 48; Dkt. No. 238 at ¶ 48). Admittedly, AAG Roberson was licensed to carry the weapon by the VIPD for "home and personal protection" during his tenure as an AAG with the VIDOJ. (Dkt. No. 238-3; Dkt. No. 194 at ¶ 15; Dkt. No. 207 at ¶ 15; Dkt. No. 202 at ¶ 24; Dkt. No. 238 at

---

[14] While Plaintiffs characterize the absence of policies in these areas as exemplifying "reckless disregard or deliberate indifference to the [Plaintiffs'] constitutional rights" (Dkt. No. 217 at 29), the Court deems such absence as further corroboration of the lack of a connection between AAG Roberson's possession of a weapon and his job responsibilities.

¶ 24).[15] However, the fact that the nature of AAG Roberson's work as a criminal prosecutor is such that it may expose him to certain risks that would warrant the issuance of a license to carry a firearm for his personal protection does not thereby convert AAG Roberson into an officer authorized by virtue of his Government position and job duties to affirmatively intervene in an altercation—as he did here—and to use his weapon in connection therewith. With or without his personal weapon, AAG Roberson remained—for purposes of his employment relationship and connection to the Government—an Assistant Attorney General only, not a law enforcement

---

[15] The parties agree, and a copy of AAG Roberson's firearm license demonstrates, that on April 18, 2008, AAG Roberson was authorized to carry the firearm used in the shooting by virtue of a license issued to him by the VIPD pursuant to 23 V.I.C. § 454. (Dkt. No. 238-3; Dkt. No. 202 at ¶ 24; Dkt. No. 238 at ¶ 24). Section 454 provides in pertinent part: "A firearm may be lawfully had, possessed, borne, transported, or carried in the Virgin Islands by . . . [a]n officer or employee of the Government of the Virgin Islands in cases where such license, in the judgment of the [Police Commissioner of the Virgin Islands], should be issued to such officer or employee by reason of the duties of his position." 23 V.I.C. § 454(1).

As part of the license application process, AAG Roberson submitted his own affidavit and those of two of his coworkers stating that the nature of his employment as an AAG "requires [him] to come in contact frequently with criminal defendants and to confront them in the criminal legal system" which "necessarily causes hostility" and places him "in a dangerous situation due to the possibility of retaliation." (Dkt. No. 202-22 at 1-3; Dkt. No. 202 at ¶ 24; Dkt. No. 238 at ¶ 24). The affidavits further state that "[p]ossession of a firearm is justified given the nature of [AAG Roberson's] work in prosecuting criminals and the danger they present to law enforcement and prosecutors in the performance of their legal duties." (Dkt. No. 202-22 at 1-3).

Section 454, pursuant to which AAG Roberson was licensed to carry a firearm, is different from Section 453 of Title 23, which authorizes certain individuals to possess firearms—without obtaining a license—in the discharge of their official duties and in accordance with laws and regulations applicable to their conduct. These individuals include: (1) members of the United States Armed Forces or the organized reserves; (2) United States employees and officers duly authorized by federal law to carry firearms; (3) certain individuals employed in fulfilling defense contracts with the United States Government or its agencies; (4) members of the police force of the Virgin Islands, marshals, and other duly authorized peace officers; and (5) penitentiary and jail wardens and guards. 23 V.I.C. § 453(a)(1-5).

officer authorized to keep the peace.[16] Plaintiffs have provided no legal authority or convincing argument to support a contrary conclusion.

Even if the Court were to accept Plaintiffs' account of the events in question—that AAG Roberson unlawfully and without provocation gunned down Thomas (Dkt. No. 20-2 at ¶¶ 3, 10)—such a finding would not alter the result, but would lend further support to the conclusion that AAG Roberson was not acting within the scope of his employment with the Government.[17] As the Third Restatement explains, the nature and magnitude of an employee's tortious conduct, and whether such conduct constitutes a criminal act, bears on the determination of whether the employee acted in the scope of his employment. Restatement Third § 7.07 cmt. c. Unlawfully shooting and killing another is conduct of extreme nature and magnitude, and could lend itself to a finding that the individual was not acting within the scope of his employment. *See* Restatement Third § 7.07 cmt. c, illus. 5 (noting that if an employee "draws a gun and shoots" a customer during the course of an argument at work, "the nature of [the employee]'s action—which constitutes a serious crime—and its extreme quality may indicate that [the employee] has launched upon an independent course of action," which would demonstrate that the employee was not acting within the scope of his employment). Such would be the case under the circumstances here.

---

[16] Thus, Plaintiffs' claim that the Government somehow controlled AAG Roberson's conduct on the night of the shooting because the VIPD issued him the firearm license lacks merit. (Dkt. No. 217 at 21). Similarly, Plaintiffs' contention that the Government (i.e. VIDOJ) "armed [AAG Roberson], and continues to arm him" is—as the undisputed facts show—inaccurate. (*Id.* at 20). Plaintiffs' attempt to include the VIPD—the firearm licensing agency—as part of "the Government" for purposes of the scope of employment analysis is misguided.

[17] AAG Roberson has maintained throughout this lawsuit that he lawfully acted in self-defense and the defense of others.

The Court's conclusion that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas is consistent with other decisions rendered by the courts of the Virgin Islands, which have often concluded that employees who physically assaulted individuals did not do so in the scope of their employment. *See e.g.*, *Brunn v. Dowdye*, 2009 V.I. LEXIS 19, *1-5 (V.I. Super. Ct. Oct. 19, 2009) (finding that "it is clear that [the officer's] actions were outside the scope of his employment and that the [VITCA] bars a suit against the Government under the theory of respondeat superior" where an off-duty police officer murdered an individual by "shooting her in the head several times"); *Bowen v. Zacko*, 50 V.I. 22, 28-32 (V.I. Super. Ct. 2008) (concluding that a bar manager who assaulted a customer following an offensive personal remark regarding the infidelity of the manager's wife was not acting in the scope of his employment even though the assault occurred at work and during business hours); *Liles v. Inc. Revetaw*, 2010 U.S. Dist. LEXIS 80984, *23-24 (D.V.I. Aug. 10, 2010) (determining that an alleged assault by ferry employee on customer was not within scope of employment); *Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502, *16 (D.V.I. May 27, 2009) (noting that a supervisor's alleged conduct in throwing keys at plaintiff and pushing her "was outside the scope of employment because the conduct was for personal motives"); *Bell v. Univ. of V.I.*, 45 V.I. 407, 412-13 (D.V.I. 2003) (finding that Plaintiff would be unable to demonstrate that a teacher who pushed a student was acting in the scope of his employment); *Chase*, 3 F. Supp. 2d at 642-43 (concluding that a Virgin Islands Port Authority employee who assaulted plaintiff while working at the Cyril E. King Airport on St. Thomas was not acting in the scope of his employment).

As the cases reflect, depending on the circumstances, the conclusion that an individual was acting outside the scope of his employment can be reached even when the alleged tortfeasor

was an off-duty police officer with law enforcement responsibilities, or where the incidents occurred on the job site while performing the employer's business. Here, the conclusion is even more compelling where the incident occurred: (1) off the job site; (2) after hours; (3) while AAG Roberson was engaged in a personal social activity; (4) with the use of a personal weapon that was not issued by the VIDOJ and not required for the performance of AAG Roberson's job duties; and (5) under circumstances that had nothing whatsoever to do with AAG Roberson's job duties as a prosecutor and legal adviser, or the business of the VIDOJ. With these facts in mind, the Court finds that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas.

Plaintiffs advance a number of unpersuasive arguments in an effort to convince the Court otherwise. First, Plaintiffs contend that AAG Roberson must have been acting in the scope of his employment because that is what he claimed during his deposition. (Dkt. No. 207 at ¶ 7).[18] AAG Roberson made this self-serving statement after the Government had rejected his request to be represented in this matter. Specifically, counsel for AAG Roberson wrote a letter to Attorney General Frazer on September 4, 2008, stating that "the [G]overnment is obligated to defend [AAG Roberson] in the lawsuit" because "[t]he complaint alleges that Mr. Roberson was acting in the scope of his employment at the time of the shooting." (Dkt. No. 194-8).[19] The Government

---

[18] During AAG Roberson's November 21, 2011 deposition, Plaintiffs' counsel asked the following question: "Were you acting in the course and scope of your employment as an employee of the Department of Justice at the time of the shooting?" AAG Roberson responded: "I believe that I was." (Dkt. No. 202-4 at 10).

[19] Although not referenced in the letter, 33 V.I.C. § 3415(a) provides:

> The Attorney General shall, if he determines it to be probable that the act or acts upon which any civil action against an officer or employee of the Government of the United States Virgin Islands is based, *were performed within the scope of the*

denied AAG Roberson's request for representation by response dated March 16, 2009, stating that "[r]egardless of what is alleged in the complaint, Attorney Roberson is well aware, as we are, that he was not acting within the scope of his employment at the time of the incident." (Dkt. No. 194-7). Irrespective of his motivation for claiming that he was acting within the scope of his employment when he shot Thomas, the simple fact remains that AAG Roberson's *post hoc* opinion on this legal issue—unsupported by any legitimate factual foundation—does nothing to alter the Court's conclusion reached above.

Plaintiffs also note that during his deposition, AAG Roberson stated that by protecting the public from the armed Thomas, he was upholding his oath as an Assistant Attorney General. (Dkt. No. 202-4 at 10-11, 39-40). A signed copy of AAG Roberson's oath, however, does not speak to protecting people from physical violence. Instead, the oath provides that AAG Roberson will: (1) "support, obey, and defend the *Constitution and the laws* of the United States applicable to the Virgin Islands and the *laws* of the Virgin Islands"; and (2) "discharge the duties of Assistant Attorney General with fidelity." (Dkt. No. 194-5 at 1) (emphasis added).[20] By relying on the oath of office, Plaintiffs appear to be suggesting that the oath should be interpreted outside of the context in which it was taken—here, as an Assistant Attorney General—and in a manner so as to enlarge the scope of the oath taker's established job responsibilities—here, to prosecute

_____

*officer or employee's employment*, and if requested in writing by the officer or employee, undertake the defense of the action.

33 V.I.C. § 3415(a) (emphasis added).

[20] The oath also provides that AAG Roberson does not advocate, or belong to an organization that advocates, the overthrow of the government of the United States or Virgin Islands by force or violence or other unconstitutional means, or seeks by force or violence to deny other persons their rights under the Constitution and laws. (Dkt. No. 194-5 at 1).

criminal cases and provide legal advice to law enforcement officers. The Court cannot accept such a contrived rationalization.

Plaintiffs next assert that AAG Roberson was acting within the scope of his employment because he testified during his deposition that prior to shooting Thomas, AAG Roberson yelled: "Department of Justice. I have a gun." (Dkt. No. 217 at 20; Dkt. No. 202-4 at 50, 74).[21] Any such employer identification, however, does not transform personally motivated conduct into conduct performed within the scope of employment. *See Turk v. McCarthy*, 661 F. Supp. 1526, 1536 (E.D.N.Y. 1987) (finding, despite his self-identification as a police officer prior to the incident, that defendant's shooting of a security guard during an altercation arising out of defendant's attempt to drink alcohol at an amusement park was not within the scope of his employment with the police force). To find otherwise would effectively rewrite the VITCA—the Virgin Islands could be held liable whenever an employee simply invoked the name of his Government employer, instead of when the employee's negligent or wrongful conduct was actually committed within the scope his employment as required by 33 V.I.C. § 3408(a). That, unquestionably, is not the law.

---

[21] The Court notes that despite numerous eyewitness accounts of the events of April 18, 2008, Plaintiffs have not identified any evidence corroborating the claim made during AAG Roberson's deposition—over three years after the shooting, and after the Government's refusal to defend AAG Roberson on the grounds that he was not acting within the scope of his employment—that he yelled: "Department of Justice. I have a gun." In fact, this alleged assertion is noticeably absent from AAG Roberson's initial statement to police transcribed on the night of the shooting, in which he stated that he told Thomas "two or three time[s], 'stop or I will shoot,'" but makes no mention of yelling the name of his employer. (Dkt. No. 194-3 at 2). Other witness accounts support this initial version. For example, in her written statement to VIPD investigators, Ms. Trepoy states that AAG Roberson "raised his gun and pointed it directly at [Thomas] and ordered him to stop or [Roberson] would shoot," and that Thomas did not heed three such warnings. (Dkt. No. 194-2 at 2). Another witness, Josephine Buckley, similarly told investigators that AAG Roberson "pulled out his gun and pointed it at Gilbert and told him to stop or he's going to shoot." (Dkt. No. 202-14 at 4).

Plaintiffs also attempt to liken the circumstances of the instant case to those presented to the Seventh Circuit in *Javier v. City of Milwaukee*, 670 F.3d 823 (7th Cir. 2012), contending that as in *Javier*, the jury should resolve the issue of whether AAG Roberson was acting within the scope of his employment. (Dkt. No. 217 at 26). Plaintiffs' reliance on *Javier* is misplaced, however, as that case is both procedurally and factually distinguishable from the case at bar. In *Javier*, the plaintiffs—decedents' minor children and his estate—brought excessive-force and loss-of-life claims pursuant to 42 U.S.C. § 1983 against an off-duty Milwaukee police officer who shot and killed the decedent following a late-night encounter which began with the decedent tailgating the officer. *Id.*, 670 F.3d at 824. The plaintiffs also named the City of Milwaukee as a defendant pursuant to a Wisconsin statute that requires the City to pay judgments assessed against its employees for acts committed within the scope of their employment. *Id.* (citing WIS. STAT. § 895.46).

Procedurally, *Javier* stems from the plaintiffs' challenge to the trial judge's refusal to give their proposed jury instructions regarding the scope-of-employment issue. *Id.* at 828. The Seventh Circuit's decision does not address the pertinent legal issue in this case—namely, the propriety of a subject matter jurisdiction challenge and the Court's pretrial determination of the issue whether a criminal prosecutor was acting in the scope of his employment when he shot someone in an altercation at a restaurant. And factually, the question of whether the off-duty officer in *Javier* acted within the scope of his employment is a very different question than that posed in the instant case. Unlike AAG Roberson, who is a criminal prosecutor and is not charged with law enforcement duties, the off-duty officer in *Javier* was required by department policy "at all times within the boundaries of the City, [to] preserve the public peace, prevent crime, detect and arrest violators of the law, and protect life and property." *Id.* at 825. According to the off-

22

duty officer, he acted pursuant to this policy that requires officers to take action against lawbreakers even when off duty by firing shots at an individual who allegedly tailed his vehicle, attempted to run the officer over, and brandished a gun. *Id.* at 824. AAG Roberson was not subject to a similar policy, nor does he purport to have acted in accordance with one. Thus, *Javier* does not present an apt analogy to the circumstances of this case.

Finally, Plaintiffs appear to argue that, even if AAG Roberson was not acting within the scope of his employment, the Government can nonetheless be held liable on the grounds that it ratified AAG Roberson's conduct during a subsequent investigation of the shooting. (Dkt. No. 217 at 30-32). To support this argument, Plaintiffs assert that the Government reinstated AAG Roberson "after completing its 'investigation,'" even though "a jury could find that Roberson's use of deadly force was not justified and unconstitutional." (*Id.* at 32). Therefore, according to Plaintiffs' tautology, "the doctrine of ratification provides [Plaintiffs] with a legal basis of recovery against the Government by application of the doctrine of ratification." (*Id.*). The Court is not persuaded by this argument.

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement Third § 4.01(1). A person ratifies an act by: (1) "manifesting assent that the act shall affect the person's legal relations"; or (2) "conduct that justifies a reasonable assumption that the person so consents." *Id.* at § 4.01(2). Here, the Government has not "manifest[ed] assent" that AAG Roberson's prior act of shooting Thomas should affect its legal relations. In fact, the Government has expressly repudiated AAG Roberson's actions and denied representing him in this matter on the grounds that "he was not acting within the scope of his employment at the time of the incident." (Dkt. No. 194-7). Additionally, the Government's conduct—the post-shooting investigation—does not justify the

"reasonable assumption" that it so assents. While Plaintiffs imply that the only way the Court could conclude the Government did *not* ratify AAG Roberson's actions was if "an internal affairs report sustains charges of misconduct and results in discipline," this argument ignores another possible outcome of an investigation identified by Plaintiffs—that "an internal affairs report may clear officers of charges and result in no discipline." (Dkt. No. 217 at 31). Thus, failure to discipline AAG Roberson does not equate to the Government's ratification of his conduct, and the Court will reject Plaintiffs' contrary contention.

In sum, Plaintiffs have offered no persuasive arguments to alter the Court's conclusion that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas.[22] Accordingly, the Government cannot be held vicariously liable for AAG Roberson's conduct because it enjoys immunity from such tort claims.

## C.      Direct Liability

Plaintiffs also argue that the Government is *directly* liable for the harm caused by AAG Roberson due to its negligent hiring, retention, training, and supervision of AAG Roberson. (Dkt. No. 217 at 27-32). In essence, Plaintiffs contend that, even if AAG Roberson was *not* acting within the scope of his employment, the Government is still liable because his supervisors *were* acting within the scope of their employment with the Government when they hired, retained, trained, and supervised AAG Roberson. Plaintiffs also advanced this theory in their Amended

---

[22] The Court also notes that Plaintiffs could not establish that AAG Roberson was operating within the scope of his employment under the language of the four-pronged test employed by the Second Restatement. *See supra*, note 12. For the same reasons discussed above: (1) AAG Roberson was not engaging in conduct "of the kind he is employed to perform"; (2) the shooting did not "occur[] substantially within the authorized time and space limits" of his employment; (3) the shooting was not "actuated, at least in part, by a purpose to serve" the Government; and (4) the Government could not expect AAG Roberson to intentionally shoot Thomas. Restatement Second § 228(1)(a)-(d).

Complaint, claiming that the Government is liable for: (1) the negligent hiring, retention, training, and supervision of AAG Roberson (Count IV); (2) negligent and intentional infliction of emotional distress (Count V); and (3) punitive damages (Count VI). (Dkt. No. 20-2 at ¶¶ 27-40).[23]

Plaintiffs' claims for direct liability amount to an improper attempt to circumvent the Government's immunity from tort claims stemming from actions of employees committed outside the scope of their employment. In this regard, the reasoning employed by the Superior Court in *Brunn v. Dowdye*, 2009 V.I. LEXIS 19 (V.I. Super. Ct. Oct. 19, 2009), is instructive in explaining why Plaintiffs' claims predicated on the Government's alleged negligent hiring, retention, training, and supervision of AAG Roberson must fail.

*Brunn* resulted from the murder of Sherett James by Joel Dowdye, who was an off-duty police officer with the VIPD when he shot James in the head several times on March 25, 2006. *Id.*, 2009 V.I. LEXIS 19 at *1. The plaintiff brought a wrongful death action against Dowdye and the Government of the Virgin Islands, alleging, *inter alia*, that the Government "negligently selected Dowdye as a police officer and negligently trained and supervised Dowdye, which resulted in the wrongful death of James." *Id.* at *1-2. After concluding that Dowdye's actions were outside the scope of his employment, and thus the Government was not liable under the theory of *respondeat superior*, *id.* at *5, the Superior Court next addressed the plaintiff's attempt to hold the Government directly liable based on the claim that "the superiors of Joel Dowdye,

---

[23] Plaintiffs' negligent/intentional infliction of emotional distress and punitive damages claims are predicated on the Government's "conduct" or "actions." (Dkt. No. 20-2 at ¶¶ 37-38, 40). The only allegations in the Amended Complaint with respect to the Government's conduct are Plaintiffs' assertions in Count IV that the Government improperly hired, trained, retained, and supervised AAG Roberson. (Dkt. No. 20-2 at ¶¶ 30, 32). Thus, the Court concludes, as it must, that all of Plaintiffs' remaining claims against the Government stem from its allegedly improper hiring, training, retention, and supervision of AAG Roberson.

while acting within the scope of their employment, negligently hired, retained, trained and supervised Dowdye . . . ." *Id.* at *5-6. The court explained that when bringing such a claim under the VITCA:

> a plaintiff must allege negligence on the part of a government supervisor independent of said supervisor's relationship with his tort-committing subordinate. Otherwise, litigants could argue that the Government of the Virgin Islands is liable for any and all acts of its employees, including those acts committed outside their scope of employment, simply because the Government hired and retained the employees. This result would frustrate the purpose of the [VITCA]'s scope of employment requirement.

*Id.* at *6-7. The Superior Court found that the plaintiff had failed to allege any "negligence on the part of Dowdye's supervisors independent of their employment relationship with Dowdye," and that as a result, the Government did not waive its sovereign immunity with respect to the plaintiff's tort claims against the Government. *Id.* at *7.[24] Accordingly, the Superior Court concluded that it did not have subject matter jurisdiction to hear the plaintiff's claims against the Government, and dismissed the Government from the case. *Id.*

The same result is compelled in the instant case. Here, the Court has concluded that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas, and that the Government is thus immune from suit under the theory of *respondeat superior*. Plaintiffs in this matter have also attempted to hold the Government directly liable for

---

[24] The Superior Court found persuasive the discussions of federal courts interpreting the Federal Torts Claims Act ("FTCA"), the federal analogue to the VITCA. For example, the Superior Court noted that the United States Supreme Court concluded that the FTCA bars both claims for batteries committed by federal employees and claims "that sound in negligence but stem from a battery committed by a Government employee." *Brunn*, 2009 V.I. LEXIS 19 at *6 (quoting *United States v. Shearer*, 473 U.S. 52, 55 (1985)). The Superior Court also noted that the United States Court of Appeals for the Third Circuit concluded that when an employee commits an act outside the scope of his employment, a plaintiff needs to allege "independent negligence" of the employer because the FTCA bars claims against a government employer where the employer's only connection with plaintiff's injury is that the tortfeasor was the government's employee. *Id.* (citing *CNA*, 535 F.3d at 149).

the death of Thomas by alleging that the Government negligently hired, retained, trained, and supervised AAG Roberson. But just as this same claim failed in *Brunn*, Plaintiffs' claim must fail here because Plaintiffs have not alleged or detailed any negligence of the Government or actors of the Government "independent of their employment relationship" with AAG Roberson. *Id.* at *7. For the same reasons, the corresponding negligent and intentional infliction of emotional distress claims must also fail.[25]

Finally, with respect to Plaintiffs' claim for punitive damages (Count VI), Virgin Islands law does not support an independent claim for punitive damages. *Speaks v. Gov't of V.I.*, 2009 U.S. Dist. LEXIS 3565, *22 (D.V.I. Jan. 14, 2009) ("Insofar as [plaintiff] includes her demand for punitive damages as a separate count in the complaint, it will be dismissed, as punitive damages cannot form a cause of action upon which a plaintiff would be entitled to relief."); *Bethea v. Merchs. Commercial Bank*, 2011 U.S. Dist. LEXIS 118570, *40 (D.V.I. Oct. 13, 2011) (dismissing separate count for punitive damages "without prejudice to [plaintiff's] right to seek punitive damages for any other appropriate and viable claims"). Therefore, Count VI of the Amended Complaint must be dismissed.[26]

---

[25] As noted *supra*, note 23, Plaintiffs' negligent and intentional infliction of emotional distress claims are nothing more than a repackaging of the negligent hiring, retention, training, and supervision claims.

[26] Apart from improperly pleading punitive damages as an independent claim against all defendants, the Court notes that Plaintiffs could not recover punitive damages from the Government. *See Smith v. V.I. Port Auth.*, 2008 U.S. Dist. LEXIS 67692, *3 (D.V.I. Aug. 29, 2008) (stating that "[p]ublic and municipal entities generally are immune from punitive damages claims absent specific statutory authority" because such damages are meant to punish wrongdoers, not the "blameless taxpayers" who would be punished if punitive damage awards against governmental entities were "extracted from public coffers") (citations omitted); *Williams v. V.I. Hous. Auth.*, 2007 U.S. Dist. LEXIS 98197, *22-23 (D.V.I. Oct. 24, 2007) (granting motion to dismiss claim for punitive damages against the Government of the Virgin Islands).

The Court, therefore, finds that the Government has not waived its sovereign immunity from Plaintiffs' tort claims predicated on direct liability. To find otherwise would "frustrate the purpose of the [VITCA]'s scope of employment requirement" because it would open the Government to liability "for any and all acts of its employees, including those acts committed outside their scope of employment." *Id.* at *6-7; *see also* Restatement Third § 7.07 cmt. b. (noting that "[a]n employer does *not* assume the role of insurer against all harm suffered by third parties with whom its employees may interact") (emphasis added). Accordingly, as in *Brunn*, this Court must dismiss the Government from this action for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that AAG Roberson was not acting within the scope of his employment with the Government when he shot Thomas. Because the Government has not waived its sovereign immunity from tort claims arising from the actions of its employees committed outside the scope of their employment, and Plaintiffs have not alleged or established negligence on behalf of the Government independent of its employment relationship with AAG Roberson, the Court will dismiss the Government from this action for lack of subject matter jurisdiction.

An appropriate Order accompanies this Memorandum Opinion.

Date: June 3, 2013

                                             _____/s/_____
                                             WILMA A. LEWIS
                                             District Judge